2015 OK CIV APP 18

**Edward Lee KREMEIER, an individual, Plaintiff/Appellant,**

v.

**TRANSITIONS, INC., an Oklahoma corporation, Defendant,**

and

**M. Sue Grantham, an individual, Defendant/Appellee.**

**No. 112,257.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 9, 2014.

Certiorari Denied Feb. 2, 2015.

---

Tom L. King, Justin T. King, King Law Firm, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Jake Jones, III, Sheila Stinson, Kirk & Chaney, Oklahoma City, Oklahoma, for Defendant/Appellee.

DEBORAH B. BARNES, Chief Judge.

¶ 1 Having previously granted summary judgment in favor of Defendant Transitions, Inc. (Transitions), the trial court granted summary judgment in favor of Defendant/Appellee M. Sue Grantham (Grantham) in its order filed in July 2013. Plaintiff/Appellant Edward Lee Kremeier (Kremeier) appeals the trial court's Order denying his "Motion to Reconsider" the July 2013 order. Kremeier does not challenge the granting of summary judgment in favor of Transitions, but challenges only the granting of summary judgment in favor of Grantham—his former counselor. Briefly stated, Grantham called the Oklahoma Department of Human Services (DHS) to report that Kremeier, her patient at the time, posed a threat of sexual abuse to Kremeier's youngest daughter. Kremeier argues genuine disputes of material fact exist as to whether, among other things, Grantham's report to DHS was made in bad faith. Based on our review, we affirm.

## BACKGROUND

¶ 2 Although the summary judgment motion, response, and reply, together with the motion to reconsider, response, and reply, have been provided in the record on appeal, no pleadings have been provided on appeal. As to the content of the petition, in the trial court's July 2013 order, it states that Kremeier asserted the following theories of recovery against Grantham: "[b]ad-faith reporting of child abuse to DHS," and "[b]reach of confidentiality, conflict of inter-

est, and failing to assist in the delivery of counseling records."[1]

¶3 In May 2013, Grantham filed her motion for summary judgment, arguing that regardless of the theories asserted against her by Kremeier relating to her telephonic report to DHS, she is immune from liability pursuant to 10A O.S.2011 § 1–2–104, which provides, among other things, that "[a]ny person who, in good faith and exercising due care, reports suspected child abuse ... shall have immunity from any liability, civil or criminal...."

¶4 The undisputed facts set forth in Grantham's motion and admitted in Kremeier's response are as follows:

- Kremeier, an adult in his 50s, sought mental health treatment through Transitions in February 2010 for "anger, [and] recovery from verbal and sexual abuse" suffered as a child.
- Kremeier requested Grantham as his counselor and Grantham accepted Kremeier as her patient.
- Kremeier's intake session with Transitions occurred in February 2010, and Kremeier signed a "Consent for Use and Disclosure" form with Transitions that states, "under state law," Grantham is ethically obligated to report suspicions of child abuse "and has no obligation to confirm the truthfulness of the report."
- Kremeier was separated from his wife (Wife) when he began therapy sessions with Grantham, but prior to Kremeier filing for divorce later in 2010, "Wife moved back in with [Kremeier] and they attempted reconciliation."
- During the reconciliation attempt, Kremeier requested that Grantham begin counseling his youngest daughter, and he participated in at least one joint-counseling session with Wife.
- In May 2010, after Kremeier filed for divorce from Wife and Wife moved out of the marital residence with their youngest daughter, Grantham contacted DHS and made the telephonic report at issue.
- DHS conducted an independent investigation of Grantham's report, interviewed more than a dozen witnesses, and determined that neglect and threat of harm to Kremeier's youngest daughter was "substantiated." DHS recommended court intervention, and DHS also substantiated a threat of harm to Kremeier's son.
- The Assessment of Child Safety related to the DHS investigation indicated that child sexual abuse was suspected and circumstances suggested that sexual abuse was an "immediate concern" with regard to Kremeier's children, including his youngest daughter, and that based on the safety assessment, there was a determination that the children were in an environment with safety threats.
- Kremeier appealed DHS's findings and in September 2010, DHS upheld its finding of substantiation as to the threat of harm Kremeier posed to his youngest daughter. DHS reversed its finding as to Kremeier's son, who was about sixteen years old at the time.
- DHS sent a letter to Kremeier in January 2011 again upholding its findings.
- Kremeier was ordered to have supervised visitation with his youngest daughter by the judge in the divorce case.
- Ultimately, however, by agreement of Kremeier and Wife, Kremeier was awarded unsupervised visitation. (We note that, according to Kremeier, the DHS findings were ultimately opposed by a court-appointed Guardian Ad Litem.)
- Kremeier's alleged injuries and the damages he seeks in this action are the result of Grantham's report to DHS and would not have occurred "but for" her report.

¶5 In the argument section of Kremeier's response to Grantham's motion for summary judgment, he asserts that although Grantham is presumed to have acted in good faith

---

**1.** The trial court also specifically found, in the second paragraph of the July 2013 order, that no "professional negligence" theory was asserted by Kremeier. The second paragraph was stricken in an "Order Nunc Pro Tunc" filed in September 2013, thus striking the explicit finding that no professional negligence theory was asserted. However, the trial court did not make an explicit finding that a theory of negligence was asserted by Kremeier. Regardless, for purposes of this appeal, we will deem a negligence theory to have been properly asserted by Kremeier.

under § 1–2–104, "that presumption can be overcome if there is evidence of bad faith." Kremeier asserts a discrepancy exists between the contents of Grantham's telephonic report to DHS as contained in the DHS referral information report, and what Grantham subsequently testified she reported to DHS. In particular, Kremeier has presented evidence that, according to the DHS referral information report, Grantham reported that Kremeier disclosed to her (in their counseling sessions) that he sexually abused his *oldest daughter* when she was younger. Grantham subsequently testified, however, that Kremeier disclosed to her that he had sexually molested a young child, but that he did not specify the child's identity. Kremeier asserts this discrepancy constitutes evidence of bad faith on the part of Grantham because it shows she gave false information to DHS. He also asserts that the subsequent investigation undertaken by DHS "may have never taken place if [Grantham] had told DHS the truth at the time of her initial report."

¶ 6 Kremeier also asserts that Grantham called DHS to report the threat of sexual abuse only upon learning that Kremeier might obtain unsupervised custody of or visitation with his youngest daughter. He asserts, "[Grantham's] primary reason is that she feared that ... [Wife] would not be able to prevent [Kremeier] from having unsupervised custody of their [youngest daughter]." Kremeier asserts this constitutes evidence of bad faith because the report was made merely "for the purpose of aiding in a child-custody dispute...." Kremeier asserts, in addition, that the report was not made promptly, and when it was made, "Grantham divulged to DHS far more information than she should have," and that this constitutes additional evidence of bad faith. Kremeier also attached an affidavit of an "expert wit-ness," Dr. Richard Kishur, "whose clear opinion is that [Grantham] acted in bad faith."

¶ 7 Kremeier also argues that the immunity provided in § 1–2–104 applies only to those who report "suspected child abuse," not to those "who believe[ ] they can *'predict'* that child abuse may occur at some point *'potentially'* ...." [2] Finally, he argues § 1–2–104 requires that one must exercise due care, in addition to not acting in bad faith, when making a report of suspected child abuse in order for the immunity to apply.

¶ 8 In its July 2013 order, the trial court granted summary judgment in favor of Grantham. The trial court found

that the claims of breach of confidentiality, conflict of interest and failing to assist in the delivery of counseling records have been confessed (or at least abandoned) by [Kremeier], since his response to Grantham's Motion for Summary Judgment did not address said claims. Thus, Grantham should be granted summary judgment on said claims.

¶ 9 The trial court further found,

it is undisputed that Grantham did not possess and/or act with guilty or culpable knowledge with respect to her report to DHS.... [T]he Court finds that, at best, Grantham acted negligently and/or with bad judgment. Thus, the immunity shield provided by § 1–2–104 bars [Kremeier's] claims against Grantham.

¶ 10 The trial court further stated, among other things, that it had "disregarded, as inadmissible," the conclusion in Dr. Kishur's affidavit that, "in [Dr. Kishur's] opinion, Grantham 'acted in bad faith, via some unknown motivation....'"

¶ 11 On August 1, 2013, within ten days of the July 2013 order, Kremeier filed a "Motion to Reconsider." [3] Kremeier again as-

---

**2.** (Emphasis in original.)

**3.** Kremeier states in his motion that, "[p]rocedurally speaking," his motion should be treated as a motion for new trial, and explains he "is simply asking that the Court review the arguments, authorities and evidence in this Motion and reconsider its decision to sustain [Grantham's motion for summary judgment]." "A motion seeking reconsideration, re-examination, re-hearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, may be regarded as a new trial motion." Rule 17, Rules for Dist. Cts. of Okla., 12 O.S.2011, ch. 2, app. We will treat Kremeier's motion as the functional equivalent of a motion for new trial. "[O]n appeal the movant may not rely on errors which are not fairly embraced in the specific grounds stated in the

serts in this motion that disputes of material fact exist as to whether Grantham "exercise[d] due care or act[ed] in good faith when she reported [Kremeier] to DHS for suspected child abuse." [4] Kremeier states it is his "unwavering position ... that Grantham's report was made in bad faith in an attempt to help [Kremeier's] then-wife in their looming custody dispute and that is why Grantham's report was clumsy and contained too much information and a lot of false information." He further states that,

Certainly no good-faith report of alleged child abuse would: (a) contain false information; (b) lack a factual foundation; (c) be based entirely on speculation; (d) be made a month after learning of the behavior which creates a suspicion; and (e) be made in order to assist a different individual client in an upcoming child custody dispute.[5]

Kremeier also again argues that the immunity does not apply when the reported abuse is threatened or potential rather than abuse that has already occurred or is ongoing.

¶ 12 In its Order filed in September 2013, the trial court denied Kremeier's motion to reconsider. From the Order denying his motion to reconsider, Kremeier appeals.

## STANDARD OF REVIEW

 ¶ 13 The standard of review to be applied in this case is as follows:

Summary relief issues stand before us for *de novo* review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by [trial] courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. A trial

court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

*Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100 (footnotes omitted). In addition, "interpretation of statutory law presents a question of law and statutes are construed to determine legislative intent in light of the general policy and purpose that underlie them." *Troxell v. Okla. Dep't of Human Servs.*, 2013 OK 100, ¶ 4, 318 P.3d 206 (citation omitted).

## ANALYSIS

*I. The only theory of recovery at issue is the bad faith/negligent reporting theory asserted against Grantham.*

 ¶ 14 Kremeier has waived all theories of recovery in this action except the theory asserted against Grantham that Grantham's report to DHS was made negligently and in bad faith. Grantham does not contest the order granting summary judgment in favor of Transitions. Furthermore, the trial court found that in Kremeier's response to the motion for summary judgment, he did not respond to Grantham's arguments regarding the additional theories asserted against her of breach of confidentiality, conflict of interest, and failure to assist in the delivery of counseling records. In his motion to reconsider, Kremeier did not contest the trial court's finding that he *abandoned* these theories. Because we treat Kremeier's motion to reconsider as the functional equivalent of a new trial motion, he cannot rely on errors which were not fairly embraced in the

timely-filed motion for new trial." *Id. See also* 12 O.S.2011 § 991(b).

4. (Emphasis omitted.)

5. Kremeier also asserted that he pled a theory of professional negligence in his petition. *See* n. 1, *supra*.

specific grounds stated in that motion.[6] Finally, we note that Kremeier did not set forth any issue pertaining to his abandonment of these additional theories in the "Issues to be Raised on Appeal" section of the petition in error, and, in his "Summary of the Case," he represents that the only issue "is that [Grantham] negligently and in bad faith made an untrue report to [DHS] about [Kremeier]." Consequently, the only theory of recovery at issue is the bad faith/negligent reporting theory asserted against Grantham.

## II. Does the immunity provision apply where the reported child abuse is threatened rather than ongoing?

██ ¶ 15 Kremeier argues that because the child abuse reported to DHS by Grantham was threatened and potential rather than ongoing, that the statutory privilege set forth in 10A O.S.2011 § 1–2–104 does not apply in this case. He argues, in essence, that even assuming Grantham reported in good faith that sexual abuse was threatened, because the report was not made on the basis of direct knowledge of abuse that had already occurred to the youngest daughter, the statutory privilege does not apply.

¶ 16 Section 1–2–104 provides, in pertinent part, that immunity from liability applies to "[a]ny person who ... reports suspected child abuse...." In *Myers v. Lashley*, 2002 OK 14, 44 P.3d 553, the Court stated as follows:

Oklahoma's child abuse reporting laws express the State's strong public interest in protecting children from abuse by the policy of mandatory reporting of *actual*

and *suspected* child abuse or neglect to appropriate authorities and agencies. The statutory scheme *imposes upon all health care professionals* (teachers as well as all other persons) an obligation to report in good faith all suspected instances of child abuse to [DHS]. No privilege or contract will relieve any person from the legally mandated reporting requirement.

*Id.* ¶ 11 (footnotes omitted).[7]

¶ 17 We disagree that a report may only be based on direct knowledge that the child in question has been the victim of sexual abuse, or is the victim of ongoing sexual abuse, by the perpetrator in order for the statutory immunity to apply. All that the statute requires is knowledge upon which a report of "suspected child abuse" can be made in good faith. Because all that is required is knowledge sufficient to support a good faith report of suspected abuse—which may, of course, be based on circumstantial factors indicating that sexual abuse is reasonably likely and potential—we reject Kremeier's strict interpretation of the statute.[8] Such an interpretation would have a chilling effect on the reporting of child abuse, and would be clearly inconsistent with the strong public interest, articulated by the *Myers* Court and by the Legislature,[9] in *protecting* children from abuse. Such an interpretation would constitute an absurd reading of the statute meant to protect children, not the potential abusers of children. We conclude the applicability of § 1–2–104 is not defeated in this case merely because the report was made on the basis of circumstantial indica-

---

**6.** *See* n. 3, *supra.* Although courts are generally "required to rule out all theories of liability fairly encompassed within the evidentiary material presented," *Parris v. Limes*, 2012 OK 18, ¶ 3, 277 P.3d 1259 (citation omitted), a party may nevertheless waive or abandon issues by, as here, failing to assert them in a new trial motion.

**7.** The version of the immunity provision applicable in *Myers* is substantially similar to that applicable in this case. The version applicable in *Myers* provides, in pertinent part: "Any person participating in good faith and exercising due care in the making of a report ... shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." 10 O.S.2001 § 7105(A). The version applicable

in the present case provides, in pertinent part: "Any person who, in good faith and exercising due care, reports suspected child abuse ... shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." Both versions also provide that "the good faith" of the person making the report "shall be presumed."

**8.** *See also Wofford v. E. State Hosp.*, 1990 OK 77, ¶ 17, 795 P.2d 516 (A duty arises to third parties "when in accordance with the standards of his profession the therapist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others.").

**9.** *See generally*, 10A O.S.2011 § 1–2–101.

tors, including Kremeier's ongoing recovery from sexual abuse he suffered as a child, and his admission of sexual abuse of a young child, rather than on the basis of direct knowledge of past or ongoing abuse by Kremeier of the youngest daughter.

*III. Must one exercise due care, in addition to not acting in bad faith, when making a report of suspected child abuse in order for the immunity to apply?*

█ ¶ 18 Kremeier argues that because § 1-2-104 provides that the immunity applies to those making a report of child abuse "in good faith and exercising due care," that the immunity only applies when the report is *both* made in good faith *and* without negligence. Taken literally and out of the larger statutory context, Kremeier's interpretation is logical. However, the *Myers* Court has already answered this question by determining that the statutory privilege in question applies as a shield against all theories of recovery for damages resulting from the report, including negligence, unless evidence can be presented showing that the report was made in bad faith. The *Myers* Court stated that, unless the plaintiff can present evidence of "bad-faith reporting of abuse," the immunity bars "any effort by those who seek to recover for harm occasioned by or through the act of reporting." *Id.* ¶ 13 (emphasis omitted). *See also Rite Aid Corp. v. Hagley,* 374 Md. 665, 824 A.2d 107, 117 (2003) ("[N]egligence and lack of good faith are not equivalent," and "if good faith immunity can be overcome by establishing negligence, then good faith immunity is a meaningless concept as one would have to be free from negligence, and thus not liable in any event, to also avail one's self of the doctrine of good faith immunity.") (citation omitted). We reject Kremeier's argument, and follow the interpretation set forth in *Myers.* Consequently, the sole issue presented is whether the evidentiary materials demonstrate a nonactionable theory of "bad faith reporting" because Grantham's conduct falls within "the range of her qualified statutory privilege for good-faith reporting of child abuse[.]" *Myers,* ¶ 1 (footnote omitted).

*IV. Do genuine disputes of material fact exist as to whether Grantham's report was made in bad faith?*

█ ¶ 19 Title 10A O.S.2011 § 1-2-104(B) provides that "the good faith of any person in making a report ... shall be presumed." In *Myers,* a case that was also decided at the summary judgment stage, the Court stated that once the statutory privilege at issue has been invoked, "the onus shift[s]" to the plaintiff "to overcome its effect" by "tendering acceptable evidentiary materials which would show the [reporter's] conduct in contest was outside the range of her statutory protection...." *Myers,* ¶ 20 (emphasis omitted) (footnotes omitted). "[P]robative materials" showing some "intentional wrongdoing" must be present in the record to overcome the statutory immunity. *Id.* ¶ 22. The *Myers* Court explained that evidence even of gross negligence, characterized as reckless indifference to the consequences, "falls short of an intentional wrong's equivalent." *Id.* (footnote omitted). The Court stated,

> While gross negligence may support a punitive damages assessment, it is insufficient ... to provide a predicate for an inference of bad faith.
>
> Even if [plaintiffs] were relying on gross negligence ... [on the part of the reporter of the child abuse] ... they could not escalate their claim against her to a willful tort from which bad faith could be inferred.

*Id.* ¶¶ 22–23 (footnotes omitted). Rather, the *Myers* Court stated that "[t]he element of scienter—that of guilty knowledge—is an indispensable ingredient in the pattern of proof required to show lack of good faith." The Court noted that bad faith, "or *mala fides* ... consists in *guilty knowledge, or willful ignorance, showing a vicious or evil mind*[.]" *Id.* ¶ 20 n. 46 (citations omitted).

¶ 20 Kremeier has presented evidence from which it may be reasonably inferred that Grantham reported to DHS that Kremeier told Grantham he had sexually abused a young child in the past and that this child was his eldest daughter when she was younger. Grantham admits that Kremeier did not tell her the name of this past victim, and,

according to her testimony, she believes a miscommunication must have occurred over the phone with the DHS employee regarding the extent of her knowledge as to the identity of the past victim. For example, Grantham has testified, "I told them that [Kremeier] did not disclose specifically who. I didn't write that report."[10] Assuming, however, that Grantham reported to DHS not only that there was a past victim, but that the past victim was Kremeier's eldest daughter, this latter information was based on mere speculation or inference because, according to Grantham's own subsequent testimony, Kremeier actually told Grantham he molested a young child, but did not tell Grantham it was his eldest daughter or otherwise directly reveal to Grantham the identity of the child. Kremeier argues that the dispute regarding the giving of this "false information" to DHS by Grantham creates a genuine dispute of material fact as to whether Grantham's report to DHS was made in bad faith.

¶ 21 Although this dispute of fact is no doubt a crucial one in Kremeier's eyes (as the father of the eldest daughter), we disagree that it constitutes evidence showing Grantham's conduct to be outside the range of her statutory protection. Even if a report contains false information, this deficiency, by itself, does not support a finding of intentional wrongdoing or constitute evidence of a vicious or evil mind necessary for *mala fides*. Good faith reports of "suspected child abuse" may not always be made by those with per-

fect knowledge of the pertinent circumstances.[11] Indeed, some reports made in good faith will be "screened out" or found to be "unsubstantiated" by DHS. § 1–2–101. However, the statutory privilege applies even to reports that are ultimately rejected or found to be unsubstantiated, so long as such reports are not made in bad faith.

¶ 22 Here, it is undisputed that Grantham's report was ultimately *substantiated* by DHS and that the DHS investigation found child sexual abuse was an "immediate concern" with regard to Kremeier's youngest daughter. We reject Kremeier's argument that the inaccuracy at issue constitutes evidence that the entire report was made in bad faith. A good faith report may contain some "clumsy"[12] speculations or inferences, especially a report that is otherwise substantiated, as here, after a thorough investigation by the authorities. We conclude that the false information discussed above, even if it was the result of negligent or grossly negligent speculation on the part of Grantham, does not provide support for a finding of bad faith necessary to overcome the statutory immunity.[13]

¶ 23 Kremeier attempts to bolster his bad faith argument by asserting that Grantham made the report only upon learning that Kremeier was seeking an award of unsupervised visitation with, or custody of, his youngest daughter.[14] The inference that Kremeier wishes this Court to endorse as

10. R. Tab. 1, Exhibit 6 at 33.

11. The very nature of the problem, in which, roughly stated, an inarticulate young child may be suffering abuse at the hands of a guileful (and depraved) adult, can clearly lead to inaccurate speculations on the part of third parties in the initial report to the DHS child abuse "hotline." See § 1–2–101.

12. See Kremeier's "Motion to Reconsider," R. Tab. 5 at 14.

13. Accordingly, we need not address the counterfactual issue of whether a genuine dispute of fact exists as to whether the investigation would have commenced even if the inaccurate detail had not been communicated. Kremeier argues the DHS investigation might not have commenced under such circumstances, or under circumstances in which it was made known to the lead investiga-

tor that Grantham provided false information. Of course, that the investigation would not have commenced under such circumstances hardly seems very convincing, see, e.g., R. Tab. 2, Exhibit 7 at 87–88, but we need not address this issue because, having found the statutory immunity has not been overcome, whether the investigation would have commenced is not a material fact.

14. As to Kremeier's argument that Grantham gave "too much information" in her report and that this constitutes evidence of bad faith, we reject this argument as lacking any indicia of bad faith. Clearly, one may give "too much information" in good faith. While this *may* be a relevant factor when, for example, assessing damages after a finding of bad faith is made, we conclude it is not relevant in this case for determining whether Grantham's conduct falls within the range of her qualified statutory privilege for good-faith reporting of child abuse.

reasonable is that Grantham was, therefore, merely seeking to assist Wife in the child custody dispute rather than seeking to protect the youngest daughter from abuse. In other words, Kremeier asserts that because Grantham reported the threat of sexual abuse only upon learning Kremeier might soon have unsupervised contact with the potential victim, this constitutes evidence of bad faith. This argument is self-defeating and provides support for good faith rather than bad faith. We conclude that the timing of the report fails to support a finding of intentional wrongdoing or of a vicious mind necessary to pierce the statutory immunity at issue.

¶ 24 Finally, Kremeier argues that the opinion set forth in the affidavit of Dr. Richard Kishur that Grantham acted "in bad faith" renders summary judgment improper. Because the concept of bad faith is a legal one, Dr. Kishur's conclusion that Grantham acted in bad faith is not entitled to any weight, nor are Dr. Kishur's opinions that "licensed clinicians ... have a higher obligation to make thoughtful, objective, truthful reports in good faith"; that "[s]uch reports must be free of subjective speculation and/or well intended but injurious innuendo"; and that Grantham acted in bad faith because she "did not have any first hand knowledge of child abuse[.]" We disregard these legal conclusions. Although Dr. Kishur's affidavit may support a finding of negligence or even gross negligence, we conclude it fails to provide support for a finding of bad faith. Because no genuine disputes of material fact exist and Kremeier has failed to overcome the qualified statutory privilege in this case, we affirm the denial of Kremeier's "Motion to Reconsider."

## CONCLUSION

¶ 25 Based on our review, we conclude that no genuine disputes of material fact exist and the trial court has not abused its discretion in denying Kremeier's "Motion to Reconsider" the July 2013 order granting summary judgment in favor of Grantham. Consequently, we affirm.

¶ 26 **AFFIRMED.**

WISEMAN, P.J., and GOODMAN, J., concur.