OSCN Found Document:KREMEIER v. TRANSITIONS, INC.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KREMEIER v. TRANSITIONS, INC.
2015 OK CIV APP 18
345 P.3d 1126
Case Number: 112257
Decided: 10/09/2014
Mandate Issued: 03/02/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 18, 345 P.3d 1126

 

EDWARD LEE KREMEIER, an individual, 
Plaintiff/Appellant,
v.
TRANSITIONS, INC., an Oklahoma corporation, 
Defendant,
and
M. SUE GRANTHAM, an individual, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, 
OKLAHOMA
HONORABLE THOMAS E. PRINCE, TRIAL JUDGE

AFFIRMED

Tom L. King, Justin T. King, KING LAW FIRM, Oklahoma City, Oklahoma, for 
Plaintiff/Appellant
Jake Jones, III, Sheila Stinson, KIRK & CHANEY, 
Oklahoma City, Oklahoma, for Defendant/Appellee


DEBORAH B. BARNES, CHIEF JUDGE:
¶1 Having previously granted summary judgment in favor of Defendant 
Transitions, Inc. (Transitions), the trial court granted summary judgment in 
favor of Defendant/Appellee M. Sue Grantham (Grantham) in its order filed in 
July 2013. Plaintiff/Appellant Edward Lee Kremeier (Kremeier) appeals the trial 
court's Order denying his "Motion to Reconsider" the July 2013 order. Kremeier 
does not challenge the granting of summary judgment in favor of Transitions, but 
challenges only the granting of summary judgment in favor of Grantham - his 
former counselor. Briefly stated, Grantham called the Oklahoma Department of 
Human Services (DHS) to report that Kremeier, her patient at the time, posed a 
threat of sexual abuse to Kremeier's youngest daughter. Kremeier argues genuine 
disputes of material fact exist as to whether, among other things, Grantham's 
report to DHS was made in bad faith. Based on our review, we affirm.
BACKGROUND
¶2 Although the summary judgment motion, response, and reply, together with 
the motion to reconsider, response, and reply, have been provided in the record 
on appeal, no pleadings have been provided on appeal. As to the content of the 
petition, in the trial court's July 2013 order, it states that Kremeier asserted 
the following theories of recovery against Grantham: "[b]ad-faith reporting of 
child abuse to DHS," and "[b]reach of confidentiality, conflict of interest, and 
failing to assist in the delivery of counseling records."[1]
¶3 In May 2013, Grantham filed her motion for summary judgment, arguing that 
regardless of the theories asserted against her by Kremeier relating to her 
telephonic report to DHS, she is immune from liability pursuant to 10A O.S. 2011 
§ 1-2-104, which provides, among other things, that "[a]ny person who, in good 
faith and exercising due care, reports suspected child abuse . . . shall have 
immunity from any liability, civil or criminal . . . ."
¶4 The undisputed facts set forth in Grantham's motion and admitted in 
Kremeier's response are as follows:

 
 · Kremeier, an adult in his 50s, sought mental health treatment through 
 Transitions in February 2010 for "anger, [and] recovery from verbal and 
 sexual abuse" suffered as a child.
 · Kremeier requested Grantham as his counselor and Grantham accepted 
 Kremeier as her patient.
 · Kremeier's intake session with Transitions occurred in February 2010, 
 and Kremeier signed a "Consent for Use and Disclosure" form with Transitions 
 that states, "under state law," Grantham is ethically obligated to report 
 suspicions of child abuse "and has no obligation to confirm the truthfulness 
 of the report."
 · Kremeier was separated from his wife (Wife) when he began therapy 
 sessions with Grantham, but prior to Kremeier filing for divorce later in 
 2010, "Wife moved back in with [Kremeier] and they attempted 
 reconciliation."
 · During the reconciliation attempt, Kremeier requested that Grantham 
 begin counseling his youngest daughter, and he participated in at least one 
 joint-counseling session with Wife.
 · In May 2010, after Kremeier filed for divorce from Wife and Wife moved 
 out of the marital residence with their youngest daughter, Grantham 
 contacted DHS and made the telephonic report at issue.
 · DHS conducted an independent investigation of Grantham's report, 
 interviewed more than a dozen witnesses, and determined that neglect and 
 threat of harm to Kremeier's youngest daughter was "substantiated." DHS 
 recommended court intervention, and DHS also substantiated a threat of harm 
 to Kremeier's son.
 · The Assessment of Child Safety related to the DHS investigation 
 indicated that child sexual abuse was suspected and circumstances suggested 
 that sexual abuse was an "immediate concern" with regard to Kremeier's 
 children, including his youngest daughter, and that based on the safety 
 assessment, there was a determination that the children were in an 
 environment with safety threats.
 · Kremeier appealed DHS's findings and in September 2010, DHS upheld its 
 finding of substantiation as to the threat of harm Kremeier posed to his 
 youngest daughter. DHS reversed its finding as to Kremeier's son, who was 
 about sixteen years old at the time.
 · DHS sent a letter to Kremeier in January 2011 again upholding its 
 findings.
 · Kremeier was ordered to have supervised visitation with his youngest 
 daughter by the judge in the divorce case.
 · Ultimately, however, by agreement of Kremeier and Wife, Kremeier was 
 awarded unsupervised visitation. (We note that, according to Kremeier, the 
 DHS findings were ultimately opposed by a court-appointed Guardian Ad 
 Litem.)
 · Kremeier's alleged injuries and the damages he seeks in this action are 
 the result of Grantham's report to DHS and would not have occurred "but for" 
 her report.
¶5 In the argument section of Kremeier's response to Grantham's motion for 
summary judgment, he asserts that although Grantham is presumed to have acted in 
good faith under § 1-2-104, "that presumption can be overcome if there is 
evidence of bad faith." Kremeier asserts a discrepancy exists between the 
contents of Grantham's telephonic report to DHS as contained in the DHS referral 
information report, and what Grantham subsequently testified she reported to 
DHS. In particular, Kremeier has presented evidence that, according to the DHS 
referral information report, Grantham reported that Kremeier disclosed to her 
(in their counseling sessions) that he sexually abused his oldest 
daughter when she was younger. Grantham subsequently testified, however, 
that Kremeier disclosed to her that he had sexually molested a young child, but 
that he did not specify the child's identity. Kremeier asserts this discrepancy 
constitutes evidence of bad faith on the part of Grantham because it shows she 
gave false information to DHS. He also asserts that the subsequent investigation 
undertaken by DHS "may have never taken place if [Grantham] had told DHS the 
truth at the time of her initial report."
¶6 Kremeier also asserts that Grantham called DHS to report the threat of 
sexual abuse only upon learning that Kremeier might obtain unsupervised custody 
of or visitation with his youngest daughter. He asserts, "[Grantham's] primary 
reason is that she feared that . . . [Wife] would not be able to prevent 
[Kremeier] from having unsupervised custody of their [youngest daughter]." 
Kremeier asserts this constitutes evidence of bad faith because the report was 
made merely "for the purpose of aiding in a child-custody dispute . . . ." 
Kremeier asserts, in addition, that the report was not made promptly, and when 
it was made, "Grantham divulged to DHS far more information than she should 
have," and that this constitutes additional evidence of bad faith. Kremeier also 
attached an affidavit of an "expert witness," Dr. Richard Kishur, "whose clear 
opinion is that [Grantham] acted in bad faith."
¶7 Kremeier also argues that the immunity provided in § 1-2-104 applies only 
to those who report "suspected child abuse," not to those "who believe[] they 
can 'predict' that child abuse may occur at some point 
'potentially' . . . ."[2] Finally, he argues § 1-2-104 requires that one must 
exercise due care, in addition to not acting in bad faith, when making a report 
of suspected child abuse in order for the immunity to apply.
¶8 In its July 2013 order, the trial court granted summary judgment in favor 
of Grantham. The trial court found

 
 that the claims of breach of confidentiality, conflict of interest and 
 failing to assist in the delivery of counseling records have been confessed 
 (or at least abandoned) by [Kremeier], since his response to Grantham's 
 Motion for Summary Judgment did not address said claims. Thus, Grantham 
 should be granted summary judgment on said claims.
¶9 The trial court further found,

 
 it is undisputed that Grantham did not possess and/or act with guilty or 
 culpable knowledge with respect to her report to DHS. . . . [T]he Court 
 finds that, at best, Grantham acted negligently and/or with bad judgment. 
 Thus, the immunity shield provided by § 1-2-104 bars [Kremeier's] claims 
 against Grantham.
¶10 The trial court further stated, among other things, that it had 
"disregarded, as inadmissible," the conclusion in Dr. Kishur's affidavit that, 
"in [Dr. Kishur's] opinion, Grantham 'acted in bad faith, via some unknown 
motivation . . . .'"
¶11 On August 1, 2013, within ten days of the July 2013 order, Kremeier filed 
a "Motion to Reconsider."[3] Kremeier again asserts in this motion that disputes 
of material fact exist as to whether Grantham "exercise[d] due care or act[ed] 
in good faith when she reported [Kremeier] to DHS for suspected child abuse."[4] Kremeier states 
it is his "unwavering position . . . that Grantham's report was made in bad 
faith in an attempt to help [Kremeier's] then-wife in their looming custody 
dispute and that is why Grantham's report was clumsy and contained too much 
information and a lot of false information." He further states that,
Certainly no good-faith report of alleged child abuse would: (a) contain 
false information; (b) lack a factual foundation; (c) be based entirely on 
speculation; (d) be made a month after learning of the behavior which creates a 
suspicion; and (e) be made in order to assist a different individual client in 
an upcoming child custody dispute.[5]
Kremeier also again argues that the immunity does not apply when the reported 
abuse is threatened or potential rather than abuse that has already occurred or 
is ongoing.
¶12 In its Order filed in September 2013, the trial court denied Kremeier's 
motion to reconsider. From the Order denying his motion to reconsider, Kremeier 
appeals.
STANDARD OF REVIEW
¶13 The standard of review to be applied in this case is as follows:

 
 Summary relief issues stand before us for de novo review. All 
 facts and inferences must be viewed in the light most favorable to the 
 non-movant. Appellate tribunals bear the same affirmative duty as is borne 
 by [trial] courts to test for legal sufficiency all evidentiary material 
 received in summary process in support of the relief sought by the movant. 
 Only if the court should conclude there is no material fact (or inference) 
 in dispute and the law favors the movant's claim or liability-defeating 
 defense is the moving party entitled to summary relief in its favor. A trial 
 court's denial of a motion for new trial is reviewed for abuse of 
 discretion. Where, as here, our assessment of the trial court's exercise of 
 discretion in denying defendants a new trial rests on the propriety of the 
 underlying grant of summary judgment, the abuse-of-discretion question is 
 settled by our de novo review of the summary adjudication's 
 correctness. Judicial discretion is abused when a trial court errs with 
 respect to a pure, unmixed question of law.
Reeds v. Walker, 2006 OK 
43, ¶ 9, 157 P.3d 100 
(footnotes omitted). In addition, "interpretation of statutory law presents a 
question of law and statutes are construed to determine legislative intent in 
light of the general policy and purpose that underlie them." Troxell v. Okla. 
Dep't of Human Servs., 2013 OK 
100, ¶ 4, 318 P.3d 206 
(citation omitted).
ANALYSIS
I. The only theory of recovery at issue is the bad 
faith/negligent reporting theory asserted against Grantham.
¶14 Kremeier has waived all theories of recovery in this action except the 
theory asserted against Grantham that Grantham's report to DHS was made 
negligently and in bad faith. Grantham does not contest the order granting 
summary judgment in favor of Transitions. Furthermore, the trial court found 
that in Kremeier's response to the motion for summary judgment, he did not 
respond to Grantham's arguments regarding the additional theories asserted 
against her of breach of confidentiality, conflict of interest, and failure to 
assist in the delivery of counseling records. In his motion to reconsider, 
Kremeier did not contest the trial court's finding that he abandoned 
these theories. Because we treat Kremeier's motion to reconsider as the 
functional equivalent of a new trial motion, he cannot rely on errors which were 
not fairly embraced in the specific grounds stated in that motion.[6] Finally, we 
note that Kremeier did not set forth any issue pertaining to his abandonment of 
these additional theories in the "Issues to be Raised on Appeal" section of the 
petition in error, and, in his "Summary of the Case," he represents that the 
only issue "is that [Grantham] negligently and in bad faith made an untrue 
report to [DHS] about [Kremeier]." Consequently, the only theory of recovery at 
issue is the bad faith/negligent reporting theory asserted against Grantham.
II. Does the immunity provision apply where the reported 
child abuse is threatened rather than ongoing?
¶15 Kremeier argues that because the child abuse reported to DHS by Grantham 
was threatened and potential rather than ongoing, that the statutory privilege 
set forth in 10A O.S. 2011 § 1-2-104 does not apply in this case. He argues, in 
essence, that even assuming Grantham reported in good faith that sexual abuse 
was threatened, because the report was not made on the basis of direct knowledge 
of abuse that had already occurred to the youngest daughter, the statutory 
privilege does not apply.
¶16 Section 1-2-104 provides, in pertinent part, that immunity from liability 
applies to "[a]ny person who . . . reports suspected child abuse . . . ." In 
Myers v. Lashley, 2002 OK 
14, 44 P.3d 553, the Court 
stated as follows:

 
 Oklahoma's child abuse reporting laws express the State's strong public 
 interest in protecting children from abuse by the policy of mandatory 
 reporting of actual and suspected child 
 abuse or neglect to appropriate authorities and agencies. The statutory 
 scheme imposes upon all health care professionals 
 (teachers as well as all other persons) an obligation to report in good 
 faith all suspected instances of child abuse to [DHS]. No privilege or 
 contract will relieve any person from the legally mandated reporting 
 requirement.
Id. ¶ 11 (footnotes omitted).[7]
¶17 We disagree that a report may only be based on direct knowledge that the 
child in question has been the victim of sexual abuse, or is the victim of 
ongoing sexual abuse, by the perpetrator in order for the statutory immunity to 
apply. All that the statute requires is knowledge upon which a report of 
"suspected child abuse" can be made in good faith. Because all that is required 
is knowledge sufficient to support a good faith report of suspected abuse - 
which may, of course, be based on circumstantial factors indicating that sexual 
abuse is reasonably likely and potential - we reject Kremeier's strict 
interpretation of the statute.[8] Such an interpretation would have a chilling effect 
on the reporting of child abuse, and would be clearly inconsistent with the 
strong public interest, articulated by the Myers Court and by the 
Legislature,[9] 
in protecting children from abuse. Such an interpretation would 
constitute an absurd reading of the statute meant to protect children, not the 
potential abusers of children. We conclude the applicability of § 1-2-104 is not 
defeated in this case merely because the report was made on the basis of 
circumstantial indicators, including Kremeier's ongoing recovery from sexual 
abuse he suffered as a child, and his admission of sexual abuse of a young 
child, rather than on the basis of direct knowledge of past or ongoing abuse by 
Kremeier of the youngest daughter.
III. Must one exercise due care, in addition to not acting in 
bad faith, when making a report of suspected child abuse in order for 
the immunity to apply?
¶18 Kremeier argues that because § 1-2-104 provides that the immunity applies 
to those making a report of child abuse "in good faith and exercising due care," 
that the immunity only applies when the report is both made in good faith 
and without negligence. Taken literally and out of the larger statutory 
context, Kremeier's interpretation is logical. However, the Myers Court 
has already answered this question by determining that the statutory privilege 
in question applies as a shield against all theories of recovery for damages 
resulting from the report, including negligence, unless evidence can be 
presented showing that the report was made in bad faith. The Myers Court 
stated that, unless the plaintiff can present evidence of "bad-faith reporting 
of abuse," the immunity bars "any effort by those who seek to recover for harm 
occasioned by or through the act of reporting." Id. ¶ 13 (emphasis 
omitted). See also Rite Aid Corp. v. Hagley, 824 A.2d 107, 117 (Md. 2003) 
("[N]egligence and lack of good faith are not equivalent," and "if good faith 
immunity can be overcome by establishing negligence, then good faith immunity is 
a meaningless concept as one would have to be free from negligence, and thus not 
liable in any event, to also avail one's self of the doctrine of good faith 
immunity.") (citation omitted). We reject Kremeier's argument, and follow the 
interpretation set forth in Myers. Consequently, the sole issue presented 
is whether the evidentiary materials demonstrate a nonactionable theory of "bad 
faith reporting" because Grantham's conduct falls within "the range of her 
qualified statutory privilege for good-faith reporting of child abuse[.]" 
Myers, ¶ 1 (footnote omitted).
IV. Do genuine disputes of material fact exist as to whether 
Grantham's report was made in bad faith?
¶19 Title 10A O.S. 2011 § 1-2-104(B) provides that "the good faith of any 
person in making a report . . . shall be presumed." In Myers, a case that 
was also decided at the summary judgment stage, the Court stated that once the 
statutory privilege at issue has been invoked, "the onus shift[s]" to the 
plaintiff "to overcome its effect" by "tendering acceptable evidentiary 
materials which would show the [reporter's] conduct in contest was outside the 
range of her statutory protection . . . ." Myers, ¶ 20 (emphasis omitted) 
(footnotes omitted). "[P]robative materials" showing some "intentional 
wrongdoing" must be present in the record to overcome the statutory immunity. 
Id. ¶ 22. The Myers Court explained that evidence even of gross 
negligence, characterized as reckless indifference to the consequences, "falls 
short of an intentional wrong's equivalent." Id. (footnote omitted). The 
Court stated,

 
 While gross negligence may support a punitive damages assessment, it is 
 insufficient . . . to provide a predicate for an inference of bad faith.
 Even if [plaintiffs] were relying on gross negligence . . . [on the part 
 of the reporter of the child abuse] . . . they could not escalate their 
 claim against her to a willful tort from which bad faith could be 
 inferred.
Id. ¶¶ 22-23 (footnotes omitted). Rather, the Myers Court 
stated that "[t]he element of scienter - that of guilty knowledge - is an 
indispensable ingredient in the pattern of proof required to show lack of good 
faith." The Court noted that bad faith, "or mala fides . . . consists in 
guilty knowledge, or willful ignorance, showing a 
vicious or evil mind[.]" Id. ¶ 20 n.46 (citations omitted).
¶20 Kremeier has presented evidence from which it may be reasonably inferred 
that Grantham reported to DHS that Kremeier told Grantham he had sexually abused 
a young child in the past and that this child was his eldest daughter when she 
was younger. Grantham admits that Kremeier did not tell her the name of this 
past victim, and, according to her testimony, she believes a miscommunication 
must have occurred over the phone with the DHS employee regarding the extent of 
her knowledge as to the identity of the past victim. For example, Grantham has 
testified, "I told them that [Kremeier] did not disclose specifically who. I 
didn't write that report."[10] Assuming, however, that Grantham reported to DHS 
not only that there was a past victim, but that the past victim was Kremeier's 
eldest daughter, this latter information was based on mere speculation or 
inference because, according to Grantham's own subsequent testimony, Kremeier 
actually told Grantham he molested a young child, but did not tell Grantham it 
was his eldest daughter or otherwise directly reveal to Grantham the identity of 
the child. Kremeier argues that the dispute regarding the giving of this "false 
information" to DHS by Grantham creates a genuine dispute of material fact as to 
whether Grantham's report to DHS was made in bad faith.
¶21 Although this dispute of fact is no doubt a crucial one in Kremeier's 
eyes (as the father of the eldest daughter), we disagree that it constitutes 
evidence showing Grantham's conduct to be outside the range of her statutory 
protection. Even if a report contains false information, this deficiency, by 
itself, does not support a finding of intentional wrongdoing or constitute 
evidence of a vicious or evil mind necessary for mala fides. Good faith 
reports of "suspected child abuse" may not always be made by those with perfect 
knowledge of the pertinent circumstances.[11] Indeed, some reports made in good 
faith will be "screened out" or found to be "unsubstantiated" by DHS. § 1-2-101. 
However, the statutory privilege applies even to reports that are ultimately 
rejected or found to be unsubstantiated, so long as such reports are not made in 
bad faith.
¶22 Here, it is undisputed that Grantham's report was ultimately 
substantiated by DHS and that the DHS investigation found child sexual 
abuse was an "immediate concern" with regard to Kremeier's youngest daughter. We 
reject Kremeier's argument that the inaccuracy at issue constitutes evidence 
that the entire report was made in bad faith. A good faith report may contain 
some "clumsy"[12] speculations or inferences, especially a report 
that is otherwise substantiated, as here, after a thorough investigation by the 
authorities. We conclude that the false information discussed above, even if it 
was the result of negligent or grossly negligent speculation on the part of 
Grantham, does not provide support for a finding of bad faith necessary to 
overcome the statutory immunity.[13]
¶23 Kremeier attempts to bolster his bad faith argument by asserting that 
Grantham made the report only upon learning that Kremeier was seeking an award 
of unsupervised visitation with, or custody of, his youngest daughter.[14] The 
inference that Kremeier wishes this Court to endorse as reasonable is that 
Grantham was, therefore, merely seeking to assist Wife in the child custody 
dispute rather than seeking to protect the youngest daughter from abuse. In 
other words, Kremeier asserts that because Grantham reported the threat of 
sexual abuse only upon learning Kremeier might soon have unsupervised contact 
with the potential victim, this constitutes evidence of bad faith. This argument 
is self-defeating and provides support for good faith rather than bad faith. We 
conclude that the timing of the report fails to support a finding of intentional 
wrongdoing or of a vicious mind necessary to pierce the statutory immunity at 
issue.
¶24 Finally, Kremeier argues that the opinion set forth in the affidavit of 
Dr. Richard Kishur that Grantham acted "in bad faith" renders summary judgment 
improper. Because the concept of bad faith is a legal one, Dr. Kishur's 
conclusion that Grantham acted in bad faith is not entitled to any weight, nor 
are Dr. Kishur's opinions that "licensed clinicians . . . have a higher 
obligation to make thoughtful, objective, truthful reports in good faith"; that 
"[s]uch reports must be free of subjective speculation and/or well intended but 
injurious innuendo"; and that Grantham acted in bad faith because she "did not 
have any first hand knowledge of child abuse[.]" We disregard these legal 
conclusions. Although Dr. Kishur's affidavit may support a finding of negligence 
or even gross negligence, we conclude it fails to provide support for a finding 
of bad faith. Because no genuine disputes of material fact exist and Kremeier 
has failed to overcome the qualified statutory privilege in this case, we affirm 
the denial of Kremeier's "Motion to Reconsider."
CONCLUSION
¶25 Based on our review, we conclude that no genuine disputes of material 
fact exist and the trial court has not abused its discretion in denying 
Kremeier's "Motion to Reconsider" the July 2013 order granting summary judgment 
in favor of Grantham. Consequently, we affirm.

¶26 AFFIRMED.

WISEMAN, P.J., and GOODMAN, J., concur.

FOOTNOTES

[1] The 
trial court also specifically found, in the second paragraph of the July 2013 
order, that no "professional negligence" theory was asserted by Kremeier. The 
second paragraph was stricken in an "Order Nunc Pro Tunc" filed in September 
2013, thus striking the explicit finding that no professional negligence theory 
was asserted. However, the trial court did not make an explicit finding that a 
theory of negligence was asserted by Kremeier. Regardless, for purposes of this 
appeal, we will deem a negligence theory to have been properly asserted by 
Kremeier.

[2] 
(Emphasis in original.)

[3] 
Kremeier states in his motion that, "[p]rocedurally speaking," his motion should 
be treated as a motion for new trial, and explains he "is simply asking that the 
Court review the arguments, authorities and evidence in this Motion and 
reconsider its decision to sustain [Grantham's motion for summary judgment]." "A 
motion seeking reconsideration, re-examination, rehearing or vacation of a 
judgment or final order, which is filed within 10 days of the day such decision 
was rendered, may be regarded as a new trial motion." Rule 17, Rules for Dist. 
Cts. of Okla., 12 O.S. 2011, ch. 2, app. We will treat Kremeier's motion as the 
functional equivalent of a motion for new trial. "[O]n appeal the movant may not 
rely on errors which are not fairly embraced in the specific grounds stated in 
the timely-filed motion for new trial." Id. See also 12 O.S. 2011 § 991(b).

[4] 
(Emphasis omitted.)

[5] 
Kremeier also asserted that he pled a theory of professional negligence in his 
petition. See n.1, supra.

[6] 
See n.3, supra. Although courts are generally "required to rule 
out all theories of liability fairly encompassed within the evidentiary material 
presented," Parris v. Limes, 2012 OK 18, ¶ 3, 277 P.3d 1259 (citation omitted), a 
party may nevertheless waive or abandon issues by, as here, failing to assert 
them in a new trial motion.

[7] The 
version of the immunity provision applicable in Myers is substantially 
similar to that applicable in this case. The version applicable in Myers 
provides, in pertinent part: "Any person participating in good faith and 
exercising due care in the making of a report . . . shall have immunity from any 
liability, civil or criminal, that might otherwise be incurred or imposed." 10 O.S. 2001 § 7105(A). The version 
applicable in the present case provides, in pertinent part: "Any person who, in 
good faith and exercising due care, reports suspected child abuse . . . shall 
have immunity from any liability, civil or criminal, that might otherwise be 
incurred or imposed." Both versions also provide that "the good faith" of the 
person making the report "shall be presumed."

[8] See 
also Wofford v. E. State Hosp., 1990 OK 77, ¶ 17, 795 P.2d 516 (A duty arises to third 
parties "when in accordance with the standards of his profession the therapist 
knows or should know that his patient's dangerous propensities present an 
unreasonable risk of harm to others.").

[9] See 
generally, 10A O.S. 2011 § 1-2-101.

[10] R. 
Tab 1, Exhibit 6 at 33.

[11] The 
very nature of the problem, in which, roughly stated, an inarticulate young 
child may be suffering abuse at the hands of a guileful (and depraved) adult, 
can clearly lead to inaccurate speculations on the part of third parties in the 
initial report to the DHS child abuse "hotline." See § 1-2-101.

[12] 
See Kremeier's "Motion to Reconsider," R. Tab 5 at 14.

[13] 
Accordingly, we need not address the counterfactual issue of whether a genuine 
dispute of fact exists as to whether the investigation would have commenced even 
if the inaccurate detail had not been communicated. Kremeier argues the DHS 
investigation might not have commenced under such circumstances, or under 
circumstances in which it was made known to the lead investigator that Grantham 
provided false information. Of course, that the investigation would not have 
commenced under such circumstances hardly seems very convincing, see, 
e.g., R. Tab 2, Exhibit 7 at 87-88, but we need not address this issue 
because, having found the statutory immunity has not been overcome, whether the 
investigation would have commenced is not a material fact.

[14] As 
to Kremeier's argument that Grantham gave "too much information" in her report 
and that this constitutes evidence of bad faith, we reject this argument as 
lacking any indicia of bad faith. Clearly, one may give "too much information" 
in good faith. While this may be a relevant factor when, for example, 
assessing damages after a finding of bad faith is made, we conclude it is not 
relevant in this case for determining whether Grantham's conduct falls within 
the range of her qualified statutory privilege for good-faith reporting of child 
abuse.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 77, 795 P.2d 516, 61 OBJ 2093, Wofford v. Eastern State Hosp.
Discussed
 2002 OK 14, 44 P.3d 553, 73 OBJ 879, MYERS v. LASHLEY
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2012 OK 18, 277 P.3d 1259, PARRIS v. LIMES
Discussed
 2013 OK 100, 318 P.3d 206, TROXELL v. OKLAHOMA DEPT. OF HUMAN SERVICES
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 7105, Renumbered as 10A O.S. § 1-2-104 by Laws 2009, HB 2028, c. 233, § 215, emerg. eff. May 21, 2009
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - Exemption
Cited