2017 OK CIV APP 52

**Lori Lynn WEST, individually and Lori Lynn West, as next friend of D.J.W., a minor child, Plaintiff/Appellant,**

v.

**JANE PHILLIPS MEMORIAL MEDICAL CENTER and Jan Reynolds, Defendants/Appellees.**

### Case Number: 115815

Court of Civil Appeals of Oklahoma, Division No. 3.

Decided: 08/17/2017

Mandate Issued: 10/18/2017

Brendan M. McHugh, Claremore, Oklahoma, for Plaintiff/Appellant.

Jason C. Rush, David A. Russell, Tulsa, Oklahoma, for Defendants/Appellees.

Bay Mitchell, Presiding Judge:

¶1 Plaintiff/Appellant Lori Lynn West, in her individual capacity and on behalf of minor child D.J.W. ("West"), appeals the trial court's dismissal of a lawsuit brought against Defendants/Appellees Jane Phillips Memorial Medical Center ("JPMC") and Jan Reynolds ("Reynolds") (collectively, "Defendants") for invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy. The lawsuit arose out of West receiving a false positive result on a drug test for methamphetamine ("meth") use after her scheduled caesarean section ("c-section") which resulted in a report being made to the Department of Human Services ("DHS") for suspected child abuse. West also appeals the trial court's grant of summary judgment in Defendants' favor on the claims of negligence and intentional infliction of emotional distress ("IIED") set forth in West's First Amended Petition and the denial of her request to include in her amended petition claims based on 42 U.S.C. 1983. Based upon our review of the record and applicable law, the decisions of the trial court are AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

¶2 West was admitted to JPMC on September 1, 2011 for a scheduled c-section. At some point during her stay, West signed a form titled "Drug Screening Consent and Waiver of Liability" ("Drug Test Waiver") which gave West's consent for JPMC to perform a drug screening test using either blood or urine. The urine sample was actually tested by Regional Medical Laboratory, Inc. ("RML") after the surgery. West tested positive for meth use. West alleged one or more of the Defendants wrongfully notified DHS and other unauthorized third parties of the positive drug test. As a result, DHS placed all three of West's minor children, including the newborn, D.J.W., into protective custody and initiated a deprived proceeding against

West and her husband. West also alleged that Reynolds, a social worker employed by JPMC, attempted to harass a confession from West that she used meth and threatened that if West did not admit to using meth the treating physician would not give her the blood transfusion she needed. Later testing showed the initial positive test for meth was a false positive, and DHS returned West's children to her approximately ten days after they were first placed in DHS custody.

¶3 West alleged she was given medication while admitted to JPMC which caused the false positive meth result but that the treating physician, Dr. Robert D. Oliver ("Dr. Oliver") failed to note the prescription of such medication appropriately for the urine test or to perform follow up tests until West demanded such be performed. West's Petition also stated that she had an earlier negative meth test which Defendants failed to disclose to DHS and that D.J.W. never tested positive for meth. West also asserted the report Reynolds made to DHS was false in that she reported West refused to give her address to DHS, when West actually did so in the presence of Reynolds. Further, Reynolds falsely reported that West and her husband were separated; that all of West's children had different fathers, that the father of D.J.W. was unknown, and that West admitted to using meth thirteen years prior. Reynolds also included in her report notes stating that West was delusional and hallucinating during labor and attributed her symptoms to being "drug related."

¶4 West filed suit against Defendants in Nowata County on November 13, 2014, and the matter was transferred on April 13, 2015 to Washington County.[1] In their Motion to Dismiss filed May 18, 2015, Defendants argued that 10A O.S. 1-2-104 provided them with immunity as to all of West's claims. Alternatively, Defendants adopted the argument set forth in Dr. Oliver's Motion to

---

1. West also named the treating physician, Robert D. Oliver, M.D., and his corporation in the original Petition along with RML, the lab which performed the test. In addition to West bringing suit in her individual capacity and on behalf of minor child D.J.W., West's husband and other children were also named as plaintiffs in the original

Petition. Review of the trial court docket showed West voluntarily dismissed the claims against Dr. Oliver and RML and that West's husband and other minor children voluntarily dismissed all of their claims against all of the original Defendants. Accordingly, we do not address any such claims or the dismissal of such in this opinion.

Dismiss filed April 13, 2015 that at least some of West's claims were barred by the applicable statute of limitations. *See* note 1, *supra.* West filed an initial suit in Washington County on August 30, 2013, voluntarily dismissed it without prejudice on February 10, 2014, and then filed the original Petition in the present case on November 13, 2014 (in Nowata County). Dr. Oliver argued that West's claims for breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy were not included in the 2013 lawsuit. Accordingly, he argued, Oklahoma's savings statute, 12 O.S. 100, did not "save" these causes of action by the refiling of the action in Nowata County on November 13, 2014 and that they were barred by the applicable statutes of limitations. The trial court agreed in part and dismissed all of West's claims except for negligence and IIED.[2] The trial court instructed West to file an amended petition removing the dismissed claims and including an expert affidavit as required by 12 O.S. Supp. 2013 19.1 within 90 days of July 9, 2015.[3]

¶ 5 Instead of filing an amended petition as ordered, West filed a Motion for Leave to File First Amended Petition on September 12, 2015 and requested leave to include claims based upon Defendants' alleged violation of 42 U.S.C. 1983.[4] Defendants responded by requesting dismissal of West's remaining claims (negligence and IIED) for her failure to comply with the trial court's order. Defendants also requested that the trial court deny West's motion for leave to include claims based upon 1983 because they were barred by the statute of limitations which the trial court granted. West then filed her First Amended Petition January 4, 2016 which reasserted her claims against Defendants for negligence and IIED and included the required affidavit. Defendants filed their Answer and later filed a Joint Motion for Summary Judgment arguing judgment must be entered in their favor because (1) neither one of them performed the test which created the false positive meth result; (2) West signed a valid release exculpating Defendants from any liability; and (3) 10A O.S. 1-2-104 provided them with immunity and West could provide no evidence of bad faith. The trial court granted the Joint Motion for Summary Judgment. On appeal, West challenges (1) the trial court's dismissal of her claims for invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy; (2) the trial court's refusal to allow her to file an amended petition to include 1983 claims; and (3) the trial court's grant of summary judgment in Defendants' favor.

## STANDARD OF REVIEW

¶ 6 We review the trial court's dismissal of West's claims *de novo. E.g. Miller v. Miller,* 1998 OK 24, ¶ 15, 956 P.2d 887. A motion to dismiss should not be sustained unless it appears without doubt that the plaintiff can prove no set of facts that would entitle her to relief. *Niemeyer v. U.S.F.& G.,* 1990 OK 32, ¶ 5, 789 P.2d 1318, 1321. Similarly, appellate courts also review orders of summary judgment *de novo,* giving no deference to the trial court. *Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 11, 160 P.3d 959, 963. Summary judgment is only appropriate when there is no substantial controversy as to any material fact, and the moving

2. The trial court did not specifically state under which theory it was granting the dismissal of West's claims for invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy.

3. In civil actions for negligence which will require the plaintiff to provide expert testimony to establish the breach of an applicable standard of care, 12 O.S. Supp. 2013 19.1 requires a plaintiff to attach to his or her petition an affidavit attesting that he or she has consulted a qualified expert, obtained a written report based upon the review of available material, and that the plaintiff

has concluded as a result of consultation with the qualified expert that the claim is meritorious.

4. 42 U.S.C. 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

party is entitled to judgment as a matter of law. *Id.* The trial court's denial of West's request to file an amended petition to include claims for violation of 42 U.S.C. 1983 is reviewed for an abuse of discretion. *Roth v. Mercy Health Center, Inc.* 2011 OK 2, ¶ 12, 246 P.3d 1079.

## IMMUNITY PURSUANT TO
## 10A O.S. 2011 1-2-104

■ ¶ 7 Defendants argued at both the motion to dismiss stage and the summary judgment stage that the immunity provided for in 10A O.S. 2011 1-2-104 precluded West from recovering on any of her claims. The statute provides in relevant part:

A. Any person who, in good faith and exercising due care, reports suspected child abuse or neglect, or who allows access to a child by persons authorized to investigate a report concerning the child shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding resulting from such report.

B. For purposes of any proceeding, civil or criminal, the good faith of any person in making a report pursuant to the provisions of Section 1-2-101 of this title shall be presumed.[5]

10A O.S. 2011 1–2–104. When interpreting the predecessor version of this statute, which is substantially similar to the current version, the Oklahoma Supreme Court illuminated the broad scope of the immunity provided.

The statute-conferred privilege is not aimed at shielding the professional from any one identified theory of liability. Rather, it is the harm that may flow from the reporting which is made irrepressible. The act of reporting and the consequences of a [mandatory reporter's] lawful compliance with the reporting statute lie at the very base of the privilege conferred. When reporting constitutes the instrument through

which the damage is inflicted ... it matters not what type of harm flows from reporting or what common-law theory is invoked by those who seek recovery. The broad statutory privilege extends across all cognizable theories of liability. It protects every [mandatory reporter] from any effort by those who seek to recover for harm occasioned by or through the act of reporting. In short, the act itself as well as all the consequences of compelled reporting stand shielded by the law's privilege. Whenever post-reporting harm is the object of one's recovery—and it cannot be connected to a professional's bad-faith reporting of abuse—it falls both explicitly and implicitly within the ambit of the law's conferred privilege.

*Myers v. Lashley,* 2002 OK 14, ¶ 13, 44 P.3d 553, 559-60. *Myers* made clear that no plaintiff can recover from any harm that flowed from the consequences of the mandatory reporting *unless* the reporting was done in bad faith. This pronouncement brings two issues to light in the present case: (1) whether West sought to redress harm caused by something other than the consequences of the mandatory reporting to DHS; and (2) whether, at the summary judgment stage, West presented "probative materials showing some intentional wrongdoing" on the part of Defendants "to overcome the statutory immunity." *Kremeier v. Transitions, Inc.,* 2015 OK CIV APP 18, ¶ 19, 345 P.3d 1126, 1133 (*quoting Myers,* 2002 OK 14, ¶ 19, 44 P.3d 553).

¶ 8 As this court analyzed in *Kremeier:*

Title 10A O.S.2011 1—2—104(B) provides that "the good faith of any person in making a report ... shall be presumed." In *Myers,* a case that was also decided at the summary judgment stage, the Court stated that once the statutory privilege at issue has been invoked, "the onus shift[s]" to the plaintiff "to overcome its effect" by "tendering" acceptable evidentiary materials which would show the [reporter's] conduct in contest was outside the range of her

---

5. 10A O.S. 2011 1-2-101 sets forth the procedure for such reporting and mandates that medical personnel (among others) report suspected child abuse or neglect. Drug abuse by a parent can qualify as both "abuse" and "neglect." *See* 10A

O.S. 2011 1-1-105(2), (47)(b). The knowing and willful failure to report child abuse or neglect, or the making of a false report, is a misdemeanor. *Id.* at 1-2-101(C), (D)(1).

statutory protection....:" "[P]robative materials" showing some "intentional wrongdoing" must be present in the record to overcome the statutory immunity. The *Myers* Court explained that evidence even of gross negligence, characterized as reckless indifference to the consequences, "falls short of an intentional wrong's equivalent." The [*Myers*] Court stated:

While gross negligence may support a punitive damages assessment, it is insufficient ... to provide a predicate for an inference of bad faith.

Even if [plaintiffs] were relying on gross negligence ... [on the part of the reporter of the child abuse] ... they could not escalate their claim against her to a willful tort from which bad faith could be inferred.

Rather, the *Myers* Court stated that "[t]he element of scienter—that of guilty knowledge—is an indispensable ingredient in the pattern of proof required to show lack of good faith." The Court noted that bad faith, "or *mala fides* ... consists in guilty knowledge, or willful ignorance, showing a vicious or evil mind[.]"

*Kremeier*, 2015 OK CIV APP 18, ¶ 19, 345 P.3d 1126 (*quoting Myers*, 2002 OK 14, ¶¶ 20-23, 44 P.3d 553) (internal citations omitted).

¶ 9 At the summary judgment stage, only two of West's theories of recovery remained: negligence and IIED. In support of their Motion for Summary Judgment, Defendants included portions of a transcript of West's deposition. In response to the question of whether she had any reason to believe that Reynolds or another employee of JMPC had "some motive to try and take her children away and lie and misrepresent facts to DHS," West replied, "I wouldn't think so." Importantly, West did not provide any evidentiary materials with her response to Defendants' Joint Motion for Summary Judgment which provided any support for the *scienter* necessary to show bad faith to pierce the statutory immunity. *Myers*, 2002 OK 14, ¶ 23, 44 P.3d 553. Instead, West's response merely reiterated the contentions put forth in her First Amended Petition that the report to DHS was false and made in bad faith.[6] This was insufficient to overcome the statutory immunity invoked by Defendants. "A party resisting a motion for summary judgment may not rely on allegations of its pleadings or bald contentions that facts exist to defeat the motion for summary judgment." *Roberson v. Waltner*, 2005 OK CIV APP 15, ¶ 8, 108 P.3d 567, 569. *See also Okla. Dept. of Securities ex rel. Faught v. Wilcox*, 2011 OK 82, ¶ 19, 267 P.3d 106, 111. "Once [West] was put on notice of [Defendants'] reliance on privilege, the onus shifted to [her] to overcome its effect. It called upon [West] to pierce, avoid or overcome that privilege (either or all) by tendering acceptable evidentiary materials which would show [Defendants'] conduct was outside the range of [their] statutory protection...." *Myers*, 2002 OK 14, ¶ 20, 44 P.3d 553.

¶ 10 Given our state's public policy strongly supporting the mandatory reporting of actual or suspected child abuse and neglect, *Myers*, 2002 OK 14, ¶ 11, 44 P.3d 553, and the reluctance of our appellate courts to pierce this immunity without some evidence of evil intent, *id.* at ¶¶ 21-23, *Kremeier*, 2015 OK CIV APP 18, ¶¶ 20-24, 345 P.3d 1126, the decision of the trial court to grant summary judgment in Defendants' favor for any post-reporting harm suffered by West is AFFIRMED. However, the question still remains whether West may recover for harm caused by Defendants' actions that was not connected to any post-reporting harm.

¶ 11 The *Myers* Court made clear that only post-reporting harm is covered by the statutory immunity. *Myers*, 2002 OK 14, ¶ 20, 44 P.3d 553 (stating that one way to defeat the statutory immunity was to show the "tort claim pressed for recovery of harm entirely disconnected from the consequences of mandatory reporting"). Our review of West's First Amended Petition demonstrated that she also sought to recover for harm which was separate and apart from the consequences of the report made to DHS (*i.e.* the removal of her children from her home

---

**6.** "Even if a report contains false information, this deficiency, by itself, does not support a finding of intentional wrongdoing or constitute evidence of a vicious or evil mind necessary for *mala fides*." *Kremeier*, 2015 OK CIV APP 18, ¶ 21, 345 P.3d 1126.

and the initiation of a deprived proceeding against her). Indeed, her negligence claim stated JPMC's drug test protocols breached the duty of care owed her, and her IIED claim plainly rested on Reynolds' attempts to harass her into a false confession of meth use. These alleged harms would have occurred regardless of whether the report had been made to DHS. We express no opinion as to whether West can, as she must, establish damages as a result of these harms, which are separate from the damages suffered as a result of the reporting. Such issue is not before this Court. The grant of summary judgment in Defendants' favor for harm not connected with the report to DHS was in error and is REVERSED.

¶ 12 Further, we find that the Drug Test Waiver that West signed prior to the drug test cannot insulate Defendants from such claims. The Drug Test Waiver provided that West "release[d] [JPMC] from any claims arising out of reporting the birth of a child who appears to be born in a condition of dependence on a controlled dangerous substance as required by state law" and that she "agree[d] to hold harmless [JPMC] its staff, its operators, directors, employees, and agents harmless from any claims arising from the information obtained through the findings of the test." The plain language of the Drug Test Waiver does not extend to claims unconnected to the mandatory reporting requirement nor does it shield Defendants from negligence in performing the test.[7] Additionally, the Drug Test Waiver cannot shield Defendants from intentional conduct as alleged by West in her IIED claim. *Schmidt v. U.S.*, 1996 OK 29, ¶ 9, 912 P.2d 871, 874.

**MOTION TO DISMISS**

■ ¶ 13 In response to West's original Petition, Defendants argued the lawsuit must be dismissed based on two different theories: (1) the statutory immunity provided for in 10A O.S. 2011 1-2-104; and (2) because some of the claims were barred by the statute of limitations. The trial court dismissed West's claims for invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy but did not specify under which theory it was dismissing those claims. We have already determined that statutory immunity precluded West from recovering from any post-reporting harm on her theories of negligence and IIED because she could not provide any evidence of the *scienter* necessary for bad faith, which necessarily also bars her recovery for post-reporting harm on the theories dismissed at this earlier stage. However, we must now look to whether these dismissed claims (invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy) were barred by the statute of limitations or sought recovery for harm other than that which was a direct consequence of the report to DHS.

■ ¶ 14 Defendants argued that five of these six theories of recovery (breach of confidentiality, unfair and deceptive trade practices, slander, malicious prosecution, and civil conspiracy) were barred by the applicable statutes of limitations because West did not list them in her 2013 lawsuit such that they were not "saved" by 12 O.S. 100.[8] Defendants' argument hinged on the theory that these five different theories of recovery as pled in the present action "constituted a distinct cause of action or a separate claim" than what was pled in the 2013 lawsuit.[9]

---

7. We also reject Defendants' contention that it cannot be held liable for the incorrect test results because the testing lab, RML, actually tested the specimen. West does not claim that the actual test was inaccurate. Rather, she alleges the protocols prior to testing (*i.e.* obtaining the specimen and providing RML with accurate information about West's medications) caused her harm.

8. Oklahoma's savings statute, 12 O.S.2011 100, provides:
 If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff ... may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

9. West filed an initial suit in Washington County on August 30, 2013, voluntarily dismissed it without prejudice on February 10, 2014, and then filed the original Petition in the present case on November 13, 2014 (in Nowata County).

*Chandler v. Denton*, 1987 OK 38, ¶ 11, 741 P.2d 855, 862-63. That is simply not the law in Oklahoma. *Id.* at ¶¶ 12-13.

> Oklahoma jurisprudence uses the transactional approach for its definition of a "cause of action." The operative event that underlies a party's claim delineates the parameters of his cause of action. This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations. That statute is designed to ensure that a party has notice of a claim against him within a statutory period of time and an adequate opportunity to prepare his case before potential evidence is lost or becomes stale.
>
> The wrongful act analysis of a "cause of action" does not conflict with the purpose of statutory limitations.
>
> [A] plaintiff must allege the operative events upon which he relies for his theories of recovery within the time period prescribed by the applicable statute.

*Id.* (Footnotes omitted). A review of the 2013 lawsuit compared to the original Petition at issue in this appeal revealed that West sought recovery on the same basic set of operative facts in both lawsuits; namely, the events surrounding her false positive meth test, the divulgence of this information to DHS and other third parties, the removal of her children from her home, and the treatment (both medical and emotional) she received while admitted to JPMC. Thus, to the extent the trial court dismissed these five theories of recovery [ (1) breach of confidentiality, (2) unfair and deceptive trade practices, (3) slander, (4) malicious prosecution, and (5) civil conspiracy] based on Defendants' argument that they constituted new "causes of action" than were presented in the 2013 lawsuit, such dismissal was in error. However, further review of the statutes of limitation for these theories of recovery also showed that some of the limitations periods had already passed when the 2013 lawsuit was filed.

 ¶ 15 In order to be saved from the limitations bar, an action must be "commenced within due time," meaning that the original lawsuit (here, the 2013 lawsuit) must have been timely filed. *Nusbaum v. Knobbe*, 2001 OK CIV APP 52, ¶ 7, 23 P.3d 302, 303-04. The applicable statutes of limitations for the causes of action Defendants sought to dismiss were as follows:

| Theory of Recovery | Limitation Period | Authority |
| --- | --- | --- |
| Breach of Confidentiality | 2 years | 12 O.S. 2011 95(A)(3) ("an action for injury to the rights of another") |
| Unfair and Deceptive Trade Practices/Violation of the Oklahoma Consumer Protection Act, 15 O.S. 751-734.1 | 3 years | 12 O.S. 2011 95(A)(2); *Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 1999 OK CIV APP 52, 9-12, 981 P.2d 1270, 1273-74. |
| Slander | 1 year | 12 O.S. 2011 95(A)(4) ("[a]n action for... slander") |
| Malicious Prosecution | 1 year | 12 O.S. 2011 95(A)(4) ("[a]n action for... malicious prosecution") |
| Civil Conspiracy | 2 years | 12 O.S. 2011 95(A)(3) ("an action for injury to the rights of another"). |

It is undisputed that the earliest date that West's right to recover accrued was September 1, 2011 (the date of D.J.W.'s birth and

the false positive meth test), The first lawsuit West filed in Washington County was filed August 30, 2013, almost exactly two years from the earliest accrual date. Accordingly, at the time of the 2013 lawsuit, West's theories of recovery based on slander and malicious prosecution were already barred by the one year limitation period and could not be saved by 12 O.S. 2011 100. Those theories of recovery as pled in the Petition at issue were properly dismissed by the trial court.

¶ 16 With the proper dismissal of those theories, the remaining theories of recovery were invasion of privacy, breach of confidentiality, unfair and deceptive trade practices, and civil conspiracy. Because we have already determined that 10A O.S. 2011 1-2-104 only provides immunity for post-reporting harm, we must now determine whether West sought to recover for harm unrelated to the mandatory reporting. Our review of West's original Petition shows that while West's claims for invasion of privacy and breach of confidentiality sought to recover for the harm caused by the DHS reporting, she also alleged that Defendants wrongfully told members of her family confidential medical information. This harm is not covered by the statutory immunity set forth in 1-2-104, and these theories of recovery were wrongfully dismissed. However, our review of the facts surrounding West's theories of recovery for unfair and deceptive trade practices and civil conspiracy show that these were squarely premised on the false reporting to DHS and are covered by 1-2-104's immunity. Accordingly, the trial court's dismissal of West's claims for unfair and deceptive trade practices and civil conspiracy is AFFIRMED but the dismissal of her claims for invasion of privacy and breach of confidentiality is REVERSED and REMANDED for Defendants to file an answer and for further proceedings.

## DENIAL OF LEAVE TO FILE AMENDED PETITION TO INCLUDE 42 U.S.C. 1983 CLAIMS

¶ 17 Finally, we address whether the trial court abused its discretion in denying West's claim to include in her amended petition claims brought pursuant to 42 U.S.C. 1983.

Our review of the proposed amended petition showed that this claim for relief relied entirely on harm caused by the reporting to DHS, for which 10A O.S. 2011 1-2-104 provided immunity to Defendants. See paragraphs 7-12, *supra*. As such, we AFFIRM the denial of West's request to file an amended petition to include these claims.

## CONCLUSION

¶ 18 The trial court's dismissal of West's claims for unfair and deceptive trade practices and civil conspiracy as set forth in her original Petition is AFFIRMED but the dismissal of her claims for invasion of privacy and breach of confidentiality is REVERSED and REMANDED for further proceedings. The grant of summary judgment in Defendants' favor on West's negligence and IIED claims for harm not connected with the report to DHS was in error and, is REVERSED and REMANDED for further proceedings. Finally, the trial court's denial of West's request to include 1983 claims in her amended petition is AFFIRMED.

BUETTNER, C.J., and SWINTON, J., concur.